UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 16-286(ADM/FLN)

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | **GOVERNMENT'S POSITION ON SENTENCING** |
| TIMOTHY ALLEN HODNEFIELD, | ) | |
| Defendant. | ) | |

The United States, by its attorneys, Gregory G. Brooker, Acting United States Attorney for the District of Minnesota, and Angela M. Munoz-Kaphing and Carol M. Kayser, Assistant United States Attorneys, hereby files this Position on Sentencing in support of its request that the Court sentence Defendant Timothy Allen Hodnefield, a previously convicted sex offender, to a term of imprisonment of 180 months, followed by a lifetime of Supervised Release. Such a sentence is sufficient, but not greater than necessary to comply with the basic purposes of criminal punishment: deterrence, incapacitation, just punishment, and rehabilitation.

## I. FACTUAL BACKGROUND

### A. The Instant Offenses

This case resulted from a peer-to-peer file sharing investigation wherein an undercover law enforcement officer was able to download images and videos depicting child pornography from the Defendant on four occasions during June and July 2015. *See*

Presentence Report ("PSR") at ¶¶ 1, 7. The Defendant knowingly used Ares, a peer-to-peer file sharing software, to download and distribute child pornography. *Id.* at ¶ 8. Thereafter, law enforcement obtained and executed a search warrant at the Defendant's mother's residence authorizing the seizure of his electronic devices. *Id.* at ¶ 8. A forensic review of the Defendant's Ares download list revealed 565 downloaded files that appeared to contain child exploitation material, based on the file names. *Id.* at ¶ 9. At the time of the seizure of the Defendant's electronics in September 2015, the Defendant's two laptops and external hard drive contained 52 images and 286 video files that appeared to depict child pornography. *Id.* Of these files, 8 images and 62 video files were determined to depict known child victims from 43 different series of child pornography. *Id.* The Defendant admitted to law enforcement that he used Ares to download and view child pornography, that he repeatedly deleted Ares and his collection of child pornography from his electronic devices, only to reinstall thereafter. *Id.* Defendant also admitted that he knew that the child pornography files on his computer could be accessed by other Ares users. *Id.* The Defendant's collection contained numerous lengthy videos, including several that lasted 29, 39, 48, and 120 minutes in duration. *Id.* at ¶ 93.

### B. The Defendant's Prior Child Pornography Conviction

On July 18, 2006, the Defendant entered a "no contest" guilty plea to Wisconsin state court charges of possession of child pornography. PSR at ¶ 37. During an interview with police during the investigation of the state offense, the Defendant admitted that he had a problem with "looking at people a little too young . . . not exactly [age] 18." *Id.* He was

found to have possessed images of children engaging in sexual contact with adults. *Id.* An additional state charge for Incest with Child was dismissed at the time the Defendant entered the guilty plea to the child pornography charge. *Id.* The Incest with Child was alleged to have involved the Defendant's oldest female child, who was five years old at the time of the offense. *Id.* at ¶¶ 37, 61. The incest charge alleged that the Defendant placed his penis in his daughter's hand and masturbated in front of her. *Id.* at ¶¶ 37, 61. The Defendant denied these allegations in a polygraph examination, but deception was indicated. *Id.* at ¶ 61. After the charge was dismissed, Defendant admitted that he placed his hands down his five-year-old daughter's pants on more than one occasion and that she "masturbated herself on his leg." *Id.* at ¶¶ 61, 63.

## II.  ARGUMENT AND CITATION OF AUTHORITIES

In 1984, Congress created the United States Sentencing Commission. *Mistretta v. United States*, 488 U.S. 361, 362, 366-367 (1989). The Sentencing Reform Act of 1984, 18 U.S.C. § 3551 et seq., directed that Commission to promulgate uniform guidelines that would be binding on federal courts at sentencing. *Id.* at 367. One purpose of the Guidelines was to address and eliminate sentencing disparities among similarly situated offenders. *See Koon v. United States*, 518 U.S. 81, 113 (1996); 28 U.S.C. § 991 (b)(1)(B). Congressional statutes instruct the Commission to carry out the objectives of 18 U.S.C. § 3553(a). *Rita v. United States*, 551 U.S. 338, 348 (2007). Significantly, as the United States Supreme Court observed in *Rita*:

> The Guidelines as written reflect the fact that the Sentencing
> Commission examined tens of thousands of sentences and worked

> with the help of many others in the law enforcement community over a long period of time in an effort to fulfill this statutory mandate. They also reflect that the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment. . . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.

551 U.S. at 349, 350. Consequently, although the Guidelines are no longer mandatory, *see United States v. Booker*, 543 U.S. 220, 245-258 (2005), "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" at sentencing. *Gall v. United States*, 552 U.S. 38, 49 (2007). "The post-*Booker* federal sentencing scheme aims to achieve uniformity by ensuring that sentencing decisions are anchored by the Guidelines and that they remain a meaningful benchmark through the process of appellate review." *Peugh v. United States*, __U.S.__, 133 S.Ct. 2072, 2083 (2013).

In *Gall*, the Supreme Court set forth the appropriate sentencing methodology: the district court calculates the advisory Guidelines range and, after hearing from the parties, considers the 18 U.S.C. § 3553(a) factors to determine an appropriate sentence. *Id*. at 49-50; *United States v. Ruvalcava-Perez*, 561 F.3d 883, 886 (8th Cir. 2009) ("In sentencing a defendant, the district court should first determine the appropriate Guidelines range, then evaluate whether a traditional departure is warranted, and finally decide whether or not to impose a guideline sentence after considering all the § 3553(a) sentencing factors.").

A. The Guidelines Range

The Government submits that the Presentence Report ("PSR") issued May 10, 2017, correctly calculates the applicable advisory Guidelines range. The PSR calculates an adjusted base offense level of 34 and a criminal history category of I, with a resulting advisory Guidelines range of 180 to 188 months.[1] The Government asks the Court to adopt the PSR's Guidelines calculations as its own.

B. An Examination Of The 3553(a) Factors Demonstrates That A Sentence of 180 Months' Imprisonment Is Appropriate

The district court may not assume that the Guidelines range is reasonable, but instead must make an individualized assessment based on the facts presented. *Gall*, 552 U.S. at 50. Section 3553(a) requires the Court to analyze a number of factors, including the history and characteristics of the Defendant, the nature and circumstances of the offense, the need for the sentence to reflect the seriousness of the offense, the need for deterrence, and the need to protect the public from further crimes of the Defendant. 18 U.S.C. § 3553(a). An analysis of these factors shows that a sentence of 180 months is appropriate.

1. History and Characteristics of the Defendant

The Defendant is a 37-year-old man, who is before the Court on his second conviction relating to child pornography. PSR at ¶ 37. The Defendant's first conviction

---

[1] The advisory Guidelines range is 151 to 188 months. PSR at ¶ 77. However, the statutory mandatory minimum sentence is 180 months' imprisonment. 18 U.S.C. §§ 2252(a)(2) and 2252(b)(1). Therefore, the applicable Guidelines range is 180 to 188 months. U.S.S.G. §5G1.1(c)(2).

stemmed from his possession of child pornography in 2006. In that case, a Wisconsin state court sentenced the Defendant to 30 days of confinement and 5 years of probation. *Id.* at ¶ 37. The Defendant's performance on probation was problematic, specifically with respect to the successful and timely completion of sex offender treatment. PSR at ¶¶ 37, 61-63. Initially, the Defendant did not consistently attend treatment. *Id.* at ¶ 37. He eventually reenrolled in treatment in May 2008, when he was threatened with revocation of probation. *Id.* Throughout this stint in treatment, the Defendant was not engaged, was argumentative, made little progress, and was ultimately terminated from treatment for continuing to deny his offense. *Id.* In October 2009, the Defendant was placed in custody pending revocation for failure to complete treatment as ordered. *Id.* Only then, when faced a second time with revocation of his probation, did the Defendant admit that he downloaded child pornography. *Id.* In 2010, the Defendant's probation was transferred to Minnesota when he moved to Faribault, Minnesota to live with family. *Id.* Once again, the Defendant reenrolled in sex offender treatment and his probation was extended for a one-year period because he failed to timely finish the treatment during his first five years of probation. The Defendant was finally successfully discharged from sex offender treatment in July 2012, and he was also discharged from probation at that time. *Id.* at ¶ 63.

At the time the Defendant was charged with possession of child pornography in Wisconsin state court, he was also charged with incest with child. *Id.* at ¶ 37. The victim of the alleged incest charge was his oldest daughter,[2] who was five years old at the time.

---

[2] The Defendant has four children, but is prohibited from having contact with them until they are 18 years old due to his 2006 Wisconsin state court conviction. PSR at ¶ 48.

*Id.* Although the charge was ultimately dismissed, the Defendant subsequently admitted in sex offender treatment that he put his hand down his five-year-old daughter's pants on multiple occasions and claimed that she "masturbated" herself on him. *Id.* at ¶ 63. This conduct should be taken into account when evaluating the Defendant's history and characteristics, and the risk that he poses of future exploitation and abuse of children.

The Defendant's previous attitude towards sex offender treatment and his minimization of his conduct with his daughter, in combination with the Defendant's current child pornography offenses, support a sentence of imprisonment of 180 months.

### 2. Nature and Circumstances of the Offense

The Defendant committed serious crimes that are deserving of appropriately serious punishment. The Grand Jury charged the Defendant with possession and distribution of child pornography. *See* Dkt. No. 1; PSR at ¶¶ 10, 22. The Defendant's behavior was purposeful, repeated, and prolific. Despite numerous years of sex offender treatment, he was not able to control or curtail his behavior. The Defendant repeatedly downloaded Ares, used this peer-to-peer file sharing software to download and distribute child pornography, subsequently deleted the software from his computer, and then started the process all over again by downloading Ares. The Defendant intentionally searched for child pornography with the search term "pthc," which he knew stood for pre-teen hardcore. The Defendant knew that the videos and images in his child pornography collection could be accessed by other Ares users.

Over the course of June and July 2015, the Defendant distributed child pornography videos and images on four occasions. PSR at ¶ 7. The videos and images distributed during this timeframe depict children under the age of 12 engaged in sexual acts with adults, including oral and anal penetration. Many of the videos are long in duration, including several that lasted 29, 39, 48, and 120 minutes. *Id.* at ¶ 93. As noted above, when law enforcement seized the Defendant's electronic devices in September 2015, they contained videos and images from 43 known series of child pornography.

The Defendant's offense was part of a long-standing pattern of seeking sexual gratification from child pornography and deserves significant consequences. Every time the Defendant viewed the images and videos he consumed, his child victims were re-victimized. The United States Supreme Court has observed the ongoing threat to victims of child pornography:

> Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

*New York v. Ferber*, 458 U.S. 747, 760 n.10 (1982) (citation omitted).

The Supreme Court's observations in *New York v. Ferber* are exemplified in the materials comprising the restitution request in this case from three of the female victims in the "Sweet Sugar" series.[3] Counsel for the three girls states that:

---

[3] The "Sweet Sugar" series involves seven minor victims. The restitution request made in this case is from an attorney who represents three of the victims, who are sisters. The case agent in this matter is working with Canadian law enforcement, who are the law enforcement point-of-contact for the "Sweet Sugar" series, to determine whether the three

> The violations that these children have endured are ongoing because the images of their abuse, the exposure of their genitalia and their physical violation, are circulated among strangers, including Mr. Hodnefield in this matter. . . . It is because this defendant, and others like him, value those images for their own depraved pleasures that these girls are repeatedly re-victimized by the circulation of their images.

PSR at ¶ 12.

Of course, people like the Defendant who seek out, download, and share child pornography only feed the market for child pornography. *See Osborne v. United States*, 495 U.S. at 109-12 (1990); *Ferber*, 458 U.S. at 755-56. If not for people like the Defendant, there would be no market for child pornography. The nature and circumstances of the Defendant's crimes warrant a sentence of 180 months.

### 3. The Need for Deterrence

In this case, there is a need for both individualized and general deterrence. Individualized deterrence is that which discourages the Defendant from ever committing similar crimes again. Clearly, the Defendant's previous experience with the criminal justice system and his many years of sex offender treatment did nothing to deter him from engaging in the exact same behavior. Only a significantly more onerous sentence is likely to influence the Defendant's future behavior. Accordingly, a sentence of 180 months'

---

victims from the "Sweet Sugar" series depicted in the Defendant's child pornography collection are the same three victims who made the restitution request. It is the Government's understanding that if the victims who made the restitution request are not depicted in the Defendant's child pornography collection, then they will withdraw their restitution request in this case.

imprisonment is an appropriate attempt to deter the Defendant from committing this crime or a similar crime again in the future.

A significant sentence is also important as a general deterrent. General deterrence is the public response necessary to deter other people from committing similar crimes. "Congress has specifically made general deterrence an appropriate consideration under 3553(a)(2)(B), [it is] one of the key purposes of sentencing." *Ferguson v. United States*, 623 F.3d 627, 631-32 (8th Cir. 2010). Moreover, Congress, the United States Supreme Court, and the United States Sentencing Commission have made clear that general deterrence is a very important sentencing goal in child pornography offenses. *See United States v. Irey*, 612 F.3d 1160, 1206 (11th Cir. 2010) ("The most expeditious if not the only practical method of law enforcement may be to dry up the market for [child pornography] by imposing severe criminal penalties on persons selling, advertising, or otherwise promoting the product") (citing *Ferber*, 458 U.S. at 760), *cert. denied*, 563 U.S. 917 (2011). In *United States v. Goldberg*, 491 F.3d 668 (7th Cir.), *cert. denied*, 552 U.S. 1041 (2007), the court discussed the goal of general deterrence:

> Young children were raped in order to enable the production of the pornography that the defendant both downloaded and uploaded—both consumed himself and disseminated to others. The greater the customer demand for child pornography, the more will be produced. Sentences influence behavior, or so at least Congress thought when in 18 U.S.C. § 3553(a) it made deterrence a statutory factor. The logic of deterrence suggests that the lighter the punishment for downloading and uploading child pornography, the greater the customer demand for it and so more will be produced.

491 F.3d at 672.

The Court is in a position to send a strong message to those like the Defendant who seek and derive sexual pleasure watching and proliferating on the internet the abuse and exploitation of children. A sentence of imprisonment of 180 months is appropriate as both an individual deterrent and a general deterrent.

### 4. The Need to Protect the Public From Further Crimes Of This Defendant

In sentencing the Defendant, the Court must weigh the need to protect the public from his future crimes. *See* 18 U.S.C. § 3553(a)(2)(C). "The basic task is to predict the likelihood that the offender will commit further offenses, assess the potential seriousness of those offenses, and determine the need to incapacitate the offender as a prophylactic measure." *Irey*, 612 F.3d at 1238. In considering his likelihood of recidivism, "a court may take into account any evidence of obvious incorrigibility and conclude that leniency has not been effective." *United States v. Gant*, 663 F.3d 1023, 1030 (8th Cir. 2011) (quoting *United States v. Walking Eagle*, 553 F.3d 654, 657 (8th Cir. 2009)).

The Defendant's previous conviction for possession of child pornography, his admissions regarding conduct with his daughter, which, despite Defendant's minimization, was sexual in nature, and his attitude towards sex offender treatment, demonstrate a substantial risk of recidivism. The Defendant was discharged from probation for the Wisconsin state court child pornography conviction on July 18, 2012. PSR at ¶ 37. Less than three years later, the Defendant was again actively and intentionally searching for, downloading, and distributing child pornography. The Defendant knowingly engaged in this behavior even though he had a prior conviction for the same crime and was punished

for that crime. He knowingly engaged in this behavior even though he participated in sex offender treatment for numerous years. And, even though he knew it was wrong, he knowingly engaged in this behavior and could not control himself. Consequently, a sentence of imprisonment of 180 months is necessary to protect the public from the Defendant's further crimes.

### C. A Lifetime of Supervised Release Is Appropriate Under The Circumstances Present Here

Supervised release "is a unique method of post-confinement supervision," *Gozlon-Peretz v. United States*, 498 U.S. 395, 407 (1991), that "fulfills rehabilitative ends, distinct from those served by incarceration." *United States v. Johnson*, 529 U.S. 53, 59 (2000). It "is not punishment in lieu of incarceration." *United States v. Granderson*, 511 U.S. 39, 50 (1994). Rather, "congressional policy in providing for a term of supervised release after incarceration is to improve the odds of a successful transition from the prison to liberty," *Johnson v. United States*, 529 U.S. 694, 708-09 (2000).

The Defendant was 36 years old when he committed the charged offenses, and is facing a fifteen-year mandatory minimum sentence. That this is his second conviction relating to child pornography reflects that he is in need of treatment. Although the Wisconsin state charges for incest with his daughter were dismissed at the time of his child pornography possession plea, the Defendant admitted that he put his hands down her pants on several occasions and had other contact with her that was sexual in nature. The Defendant's post-offense minimizations and characterization that a five-year-old "masturbated herself" on him underscores the need for a lengthy term of post-incarceration

supervision. A lifetime of supervised release is necessary to ensure that he does not relapse into his addictive behavior and again begin searching for, collecting, and distributing child pornography. A lifetime of supervised release will also ensure that he is appropriately monitored so as to prevent his abuse of any other children.

## III. CONCLUSION

For the reasons set forth above, the Government respectfully asks the Court to sentence the Defendant to imprisonment for a term of 180 months, followed by a lifetime of supervised release. The requested sentence is commensurate with the Defendant's criminal conduct and consistent with the Section 3553(a) factors. Most importantly, under all the facts and circumstances of this case, it is also fair and just.

Dated: May 24, 2017

Respectfully Submitted,

GREGORY G. BROOKER
Acting United States Attorney

*/s/ Angela M. Munoz-Kaphing*

BY: ANGELA M. MUNOZ-KAPHING
Assistant U.S. Attorney

CAROL M. KAYSER
Assistant U.S. Attorney